IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HOPPOCK LAW FIRM, LLC and KELLY HEWITT, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 22-00062-CV-W-GAF |
| ALEJANDRO MAYORKAS, SECRETARY OF HOMELAND SECURITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

# MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION
**(*With Supporting Suggestions Incorporated*)**

Pursuant to FED. R. CIV. P. 12(b)(6), named defendants Alejandro Mayorkas, Secretary of Homeland Security, and the Department of Homeland Security (collectively "DHS") hereby move the Court to dismiss the FIRST AMENDED COMPLAINT [Doc. 8] filed herein by plaintiffs Hoppock Law Firm, LLC ("Hoppock Law Firm") and Kelly Hewitt ("Hewitt"). As set out herein, the FIRST AMENDED COMPLAINT fails to state claims against DHS that are not subject to sovereign immunity and that are within the Court's subject matter jurisdiction. Consequently, the case must be dismissed.

## I. Overview

In May of 2021, Hewitt – an attorney practicing immigration law with the Hoppock Law Firm – submitted a request to a component of DHS, the United States Citizenship and Immigration Service ("USCIS"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the "entire alien file" for a client of the Hoppock Law Firm. Doc. 8-1. On June 28, 2021, the USCIS responded to Hewitt's FOIA request by noting that the agency had

identified 221 pages of responsive documents. Doc. 8-2. The USCIS provided Hewitt with 168 wholly unredacted pages of documents and 46 pages of partially redacted documents. Doc. 8-2. The USCIS noted that it was withholding seven pages in full. Doc. 8-2.

Subsequently, nearly seven months later, on January 12, 2022, the USCIS sent a letter to Hewitt regarding its previous "inadvertent disclosure of FOIA exempt records." Doc. 8-3. Specifically, the letter stated that the USCIS had "inadvertently released personally identifiable information of third parties and/or law enforcement sensitive information" as part of its June 28, 2021 production. Doc. 8-3. The USCIS' letter of January 12, 2022 "requested" that Hewitt voluntarily return, sequester, or destroy the subject records, explaining that dissemination of the information could impede or interfere with law enforcement activities and violate privacy rights. Doc. 8-3. The USCIS' letter further noted that dissemination of the information may endanger persons and/or interfere with ongoing criminal investigations. Doc. 8-3. The USCIS' letter of January 12, 2022 did not assert that Hewitt's compliance was mandated, the letter set no deadline or timetable for voluntary compliance, the letter cited to no statutory or regulatory provision requiring any action by Hewitt, and the letter did not threaten or even suggest the institution of any enforcement action by the USCIS. Doc. 8-3.

The USCIS made its request for voluntary compliance because – while the case law provides that inadvertent disclosure of documents under FOIA does not waive protections for such documents in future FOIA requests – "FOIA does not specifically provide for the return or destruction of inadvertently produced documents." *Club v. United States Env't Prot. Agency*, 505 F. Supp. 3d 982, 988 (N.D. Cal. 2020). As a consequence, when an agency mistakenly produces documents pursuant to a FOIA request that it intended to withhold (in whole or in part), the agency has no remedy under FOIA. *Id.*

Inasmuch as FOIA provided no remedy for the USCIS' error, and the USCIS was not in ongoing litigation with the plaintiffs,[1] the USCIS simply extended a voluntary request to the plaintiffs seeking their cooperation and assistance. Other than initiating the instant lawsuit, the plaintiffs have ignored the USCIS' request without consequence.

## II. The Court lacks subject matter jurisdiction over the claims asserted in the First Amended Complaint.

On January 28, 2022, the plaintiffs filed a COMPLAINT FOR DECLARATORY RELIEF AND RELIEF UNDER THE FREEDOM OF INFORMATION ACT [Doc. 1] with this Court seeking a declaratory judgment regarding the USCIS' January 12, 2022 letter. The plaintiffs initially sought review only pursuant to FOIA. Doc. 1. However, on June 1, 2022 – prior to the service of process of the original COMPLAINT – the plaintiffs filed a FIRST AMENDED COMPLAINT with the Court adding a claim [Count II] against DHS pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, *et seq*., as well as a claim [Count III] against DHS pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. As set out herein, the Court lacks subject matter jurisdiction over plaintiffs' claims regardless of the underlying legal theory based on the well-established application of sovereign immunity.

---

[1] If documents are produced by a government agency <u>during</u> the course of ongoing FOIA litigation, the agency may seek to have the federal court "exercise its inherent powers to order the return of the documents if they are protected from release under an applicable FOIA exemption." *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 2017 WL 24859, at *2 (N.D. Cal. Jan. 3, 2017). *See also Am. Civil Liberties Union v. Dep't of Def.*, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012); *Hersh & Hersh v. U.S. Dep't of Health & Human Servs*., 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008). In this case, however, there was no ongoing FOIA litigation occurring when the USCIS produced documents to the plaintiffs. Consequently, the USCIS' sole option was to send out correspondence requesting that inadvertently produced documents be voluntarily returned.

The United States, as sovereign, and its agencies are "immune from suit save as [Congress] consents to [the suit], and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351 (1980) (*quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70 (1941)) (*alteration and omission in original*). *See also Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1820 (1983) (Congress must consent to suit as an unwaivable prerequisite to the United States and/or its agencies being sued). To that end, the Supreme Court has explained:

> We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text. Legislative history cannot supply a waiver that is not clearly evident from the language of the statute. Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires.

*F.A.A. v. Cooper*, 566 U.S. 284, 290, 132 S. Ct. 1441, 1448 (2012) (*citations omitted*).

Plaintiffs binging actions against the United States and its agencies bear the burden of establishing a waiver of sovereign immunity that applies to the cause of action being brought before a court. *Hackworth v. Kansas City Veterans Admin. Med. Ctr.*, 2015 WL 506245, at *3 (W.D. Mo. Feb. 6, 2015). This burden includes showing "both a waiver of sovereign immunity and a grant of subject matter jurisdiction." *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). The plaintiffs can meet neither standard.

It is axiomatic that "federal courts are courts of limited jurisdiction." *Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 646 (8th Cir. 2021). Moreover, "[s]ubject-matter jurisdiction can never be waived or forfeited." *Id*. To that end:

> The requirement that jurisdiction be established as a threshold
> matter springs from the nature and limits of the judicial power of
> the United States and is inflexible and without exception.

*Kessler v. National Enterprises, Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003) (*quoting Godfrey v. Pulitzer Publishing Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998)). Moreover, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Insurance Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). In this case, the plaintiffs cannot establish that this Court has jurisdiction to issue a declaratory judgment or afford them any other relief against the DHS under FOIA, the APA, the Declaratory Judgment Act or any other jurisdictional grant.

## A. FOIA

In Count I of its AMENDED COMPLAINT, the plaintiffs assert a claim under FOIA invoking 5 U.S.C. § 552(a)(4)(B) as a jurisdictional basis. Doc. 8. That provision of FOIA establishes that a district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The provision makes no mention of any other relief.

In *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960 (1980), the Supreme Court considered the scope and limits of Section 552 jurisdiction in an analogous FOIA scenario. In *Kissinger*, a reporter submitted a FOIA request for certain State Department documents. However, upon receipt of the FOIA request, the State Department discovered that it no longer had possession of the documents – the documents having been retained by a former Secretary of State as "personal papers" (and subsequently donated to the Library of Congress). Efforts by the State Department to have the documents returned voluntarily proved fruitless.

5

After the State Department denied the FOIA request because the sought-after documents were not in the agency's "custody and control," the reporter filed a federal court action under FOIA relying on the jurisdictional language of Section 552. The reporter's lawsuit sought a court ruling requiring the State Department to retrieve (and produce) the documents. Ultimately the case was appealed to the Supreme Court.

The Court determined that the available remedies under FOIA were deliberately and expressly narrow. With regard to Section 552, the Court specifically found:

> The FOIA represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment. That statutory scheme authorizes federal courts to ensure private access to requested materials when three requirements have been met. <u>Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) "improperly"; (2) "withheld"; (3) "agency records." Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation.</u>

*Id*. at 150, 100 S.Ct. at 968 (*emphasis added*). In this case, the plaintiffs do not contend that the USCIS improperly <u>withheld</u> any documents. As such, 5 U.S.C. § 552(a)(4)(B) provides no jurisdictional basis for the relief sought herein by the plaintiffs. As such, Count I of the AMENDED COMPLAINT must be dismissed for lack of subject matter jurisdiction. [2]

---

[2] Even assuming that FOIA did provide initial jurisdiction for the claim being made by the plaintiffs, the claim would have to be dismissed for lack of jurisdiction. To the extent that the plaintiffs are attempting to argue that the USCIS' letter somehow rendered the disclosure of documents by the agency as "improperly withheld" under FOIA, then the plaintiffs were obligated to challenge the USCIS' action administratively before filing any action in district court. *Satterlee v. Internal Revenue Serv.*, 2021 WL 2584384, at *2 (W.D. Mo. June 23, 2021); *Widtfeldt v. United States*, 2013 WL 2149100, at *4 (D. Neb. May 16, 2013) ("[C]ourts in the Eight Circuit have concluded that a plaintiff's failure to exhaust his administrative remedies under FOIA deprives this Court of subject matter jurisdiction. . . ."). In this case, the plaintiffs did not challenge the USCIS' letter through any administrative appeal under FOIA.

## B. APA

In Count II of its AMENDED COMPLAINT, the plaintiffs assert a claim under the APA FOIA invoking 5 U.S.C. § 702 as a jurisdictional basis and alleging that the USCIS' letter was "conduct which was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." Doc. 8. The APA jurisdictional provision cited by the plaintiffs establishes that a district court has jurisdiction to undertake judicial review of claims that a person has suffered a "legal wrong because of agency action, or [been] adversely affected or aggrieved by agency action." 5 U.S.C. § 702.

Without dispute, the APA represents a limited waiver of sovereign immunity permitting an aggrieved party to bring an action against a federal government agency for certain conduct. *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996). Specifically, the APA permits a court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Nonetheless, as a matter of law and simple common sense, not every action undertaken by a federal agency is subject to federal court review. *See, e.g., Ward v. E.E.O.C.*, 719 F.2d 311, 313 (9th Cir. 1983) ("The Supreme Court has recognized that not all agency activities fall within the scope of the APA."); *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 130 F. Supp. 3d 999, 1001 (E.D. Va. 2015) ("[N]ot every agency activity is an 'agency action' under the APA."). Instead, the waiver of sovereign immunity set out in the APA is limited to <u>final</u> agency actions. *In re Russell*, 155 F.3d 1012, 1013 (8th Cir. 1998) ("[T]he APA waives [sovereign] immunity only when the agency action is final."). To that end, in order for an agency action to be "final," two conditions must be met:

> (1) the disputed action must mark the "consummation" of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature, and
>
> (2) the disputed action must be one by which "rights or obligations have been determined" from which "legal consequences will flow."

*Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S. Ct. 1154, 1168 (1997). And as a logical corollary, agency actions "which [are] purely advisory and in no way affect[] the legal rights of the relevant actors" are not final. *Id*. at 178, 117 S.Ct. at 1168 (*citing Dalton v. Specter*, 511 U.S. 462, 114 S.Ct. 171 (1994) *and Franklin v. Massachusetts*, 505 U.S. 788, 112 S.Ct. 2767 (1992)).

Under these criteria, the USCIS' letter seeking voluntary compliance was not a final agency action subject to APA review. As noted by one district court:

> [U]nder *Spear*'s second prong, agency actions of an informal and advisory nature that request voluntary compliance do not impose legal consequences or determine rights or obligations because they neither require action from private parties nor commit the agency to taking enforcement action.

*Ctr. for Food Safety v. Burwell*, 126 F. Supp. 3d 114, 124–25 (D.D.C. 2015). *See also Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 944-45 (D.C. Cir. 2012) (an FDA warning letter requesting an ear candle manufacturer to voluntarily remove ear candles from the marketplace or potentially face regulatory action was not final agency action); *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-33 (D.C. Cir. 2003) (a Consumer Product Safety Commission letter requesting a sprinkler head manufacturer to undertake voluntary corrective action was not final agency action). Further, even if the USCIS' letter could be construed as "threatening" a future enforcement action or lawsuit to seek a claw back of documents, the agency's action is still not final. As reasoned by a district court considering a challenge to a letter sent out by the EPA:

> EPA's threat to issue an SSURO [Stop Sale, Use and Removal Order to a pesticide manufacturer] is not a final agency action. The threat does not mark the consummation of the agency's decision-making process, and no rights or obligations have been determined by a possible future enforcement action.

*Tzumi Innovations LLC v. Regan*, 557 F. Supp. 3d 499, 507 (S.D.N.Y. 2021).

The limited waiver of sovereign immunity under the APA provides no jurisdictional basis for relief for the plaintiffs. Accordingly, Count II of the AMENDED COMPLAINT must be dismissed for lack of subject matter jurisdiction.

## C. The Declaratory Judgment Act

Count III of the AMENDED COMPLAINT also includes a claim seeking a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. That statutory provision creates a potential remedy for successful litigants, however, as this Court (and many other federal courts) have noted that "the Declaratory Judgment Act . . . alone do[es] not provide an independent basis for subject matter jurisdiction." *Takkallapalli v. Chertoff*, 487 F.Supp. 2d 1094, 1097 (W.D. Mo. 2007). *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 879 (1950); *Public Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003). Put alternatively, federal courts have recognized that Section 2201 "is procedural in that it enlarges the range of remedies available in federal court, but does not otherwise provide or extend federal jurisdiction." *HJR Equip., Inc. v. City of Kansas City, Missouri*, 2022 WL 1523193, at *4 (W.D. Mo. May 13, 2022).[3] Count III of the AMENDED COMPLAINT must be dismissed for lack of subject matter jurisdiction.

---

[3] The AMENDED COMPLAINT also cites in passing to the general "federal question" jurisdictional statute, 28 U.S.C. § 1331. Doc. 8. But, as again noted by this Court, "§ 1331 does not create any substantive rights or afford jurisdiction in the absence of a waiver of sovereign immunity." *Takkallapalli*, 487 F.Supp. 2d at 1097.

### III. The plaintiffs suffered no "injury in fact" and, as such, lack standing under Article III

A fundamental prerequisite to the pursuit of any federal litigation is that the plaintiffs must have standing under Article III of the United States Constitution.[4] To that end, the Eighth Circuit has explained:

> To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury.

*Iowa League of Cities v. Environmental Protection Agency*, 711 F.3d 844, 869 (8th Cir. 2013) (*citation omitted*). The plaintiffs, in seeking to invoke federal jurisdiction, "bear the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016). In this case, the plaintiffs cannot get past even the first element.

As the Supreme Court has explained, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest" that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (*quoting*, *in part*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)). The plaintiffs fail all of the requirements. The USCIS' letter did not cause a "particularized" injury. *Cf. Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury"). It did not cause a "concrete" injury. *Spokeo*, 578 U.S. at 340, 136 S.Ct. at 1548 ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist.")

---

[4] If a plaintiff cannot establish standing, "his complaint must be dismissed for lack of subject matter jurisdiction." *Agred Found. v. United States Army Corps of Engineers*, 3 F.4th 1069, 1073 (8th Cir. 2021).

Finally, the letter did not cause any injury to the plaintiffs that was actual or imminent. Generally, "[a]llegations of possible future injury do not satisfy" this standard. *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 1724 (1990). In *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138 (2013), the Court addressed the circumstances under which a threatened future injury can be deemed sufficiently "imminent," such that threatened injuries satisfy Article III's injury-in-fact requirement. In *Clapper*, the Court concluded "that threatened injury must be <u>certainly impending</u> to constitute injury in fact and that allegations of <u>possible</u> future injury are not sufficient." *Id*. at 409, 133 S.Ct. at 1147 (*emphasis in original*).

## IV. Conclusion

For the foregoing reasons, defendants Alejandro Mayorkas, Secretary of Homeland Security and the Department of Homeland Security respectfully request that the Court enter an order dismissing this action inasmuch as the plaintiffs have not and cannot establish a waiver of sovereign immunity and/or that the Court has subject matter jurisdiction over the claims asserted in the FIRST AMENDED COMPLAINT.

                                          Respectfully submitted,

                                          Teresa A. Moore
                                          United States Attorney

                           By    */s/ Jeffrey P. Ray*

                                          Jeffrey P. Ray
                                          Deputy United States Attorney
                                          Missouri Bar No. 35632

                                          Charles Evans Whittaker Courthouse
                                          400 East Ninth Street, Fifth Floor
                                          Kansas City, MO 64106
                                          (816) 426-3130   FAX: (816) 426-3165
                                          E-MAIL: Jeffrey.Ray@usdoj.gov

                                          ATTORNEYS FOR DEFENDANTS